

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEINER INDUSTRIES, INC.; <br> W.W. GRAINGER, INC.; and <br> LAB SAFETY SUPPLY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AUBURN MANUFACTURING, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 07 C 668 <br> ) Hon. John W. Darrah <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs – Steiner Industries, Inc.; W.W. Grainger, Inc.; and Lab Safety Supply, Inc.[1] – filed a declaratory judgment action against Defendant, Auburn Manufacturing, Inc., on February 2, 2007. This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 and the United States Lanham Act, 15 U.S.C. § 1051, et seq. Auburn now moves to dismiss the declaratory judgment action on the grounds that it improperly anticipated the Lanham Act lawsuit Auburn filed one week later, on February 9, 2007, in the U.S. District Court for the District of Maine against the Plaintiffs.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court considers all allegations in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A filin under

---

[1] Lab Safety Supply, Inc. was added as a Plaintiff when the Plaintiffs filed their Amended Complaint on March 5, 2007.

1

the Federal Rules of Civil Procedure should be "short and plain," and it suffices if it notifies the defendant of the principal events. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). A plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9 (Pleading Special Matters, *i.e.*, fraud, mistake, etc.). *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 713 (7th Cir. 2006) (*Kolupa*). In other words, any movant "tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Kolupa*, 438 F.3d at 713, *quoting Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Documents which are referred to in a complaint and are central to a claim, as well as any matters of public record, may be considered on a motion to dismiss. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002); *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994).

Generally, matters outside the pleadings cannot be considered on a motion to dismiss. *See, e.g., Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). However, documents attached to a complaint are considered part of the complaint and may be considered for all purposes. *E.g., Tierney v. Vahle*, 310 F.3d 734, 738 (7th Cir. 2002). Judicial notice may also be taken of matters of public record. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

## BACKGROUND

*Complaint*

For purposes of deciding the Defendant's Motion to Dismiss, the following facts from the Amended Complaint, and materials attached to or referenced in the Amended Complaint, are taken as true.[2]

Steiner, an Illinois corporation with its principal place of business in Chicago, is a leading manufacturer and supplier of protective clothing, gloves and welding supplies. (Am. Compl., ¶¶ 1, 10). One of the products manufactured and sold by Steiner are welding blanket products. (Am. Compl. at ¶ 10). Grainger, which distributes Steiner's welding blanket products, is an Illinois corporation with its principal place of business in Lake Forest, Illinois. (Am. Compl. at ¶ 11). Lab Safety, also a distributor of Steiner's welding blanket products, is a Wisconsin corporation with its principal place of business in Janesville, Wisconsin, and is a wholly owned subsidiary of Grainger. (Am. Compl. at ¶ 12). Auburn, a Maine corporation, is a manufacturer and marketer of high-performance textiles used to provide protection against extreme temperature conditions occurring in industrial settings. (Am. Compl. at ¶ 4; Am. Compl. at Ex. 2).

In approximately April 2006, Grainger published a catalog, which listed for sale a number of welding blanket products manufactured by Steiner. (Am. Compl. at ¶ 13). On the

---

[2] Both parties submit affidavits in support of, or in opposition to, the Defendant's Motion to Dismiss. These materials are outside of the pleadings and are not properly considered by the Court, unless the Court treats the Motion to Dismiss as one for summary judgment and disposed of as provided in Rule 56, giving all parties reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed. R. Civ. P. 12(b). The Court here declines to do so.

3

page of that catalog where Steiner's welding blanket products were listed, there also appeared a certification mark, known as the "FM Approved" mark. (Am. Compl. at Ex. 1). Those catalog pages, with the "FM Approved" mark, were also displayed on Grainger's website. Plaintiffs' Amended Complaint asserts that the placement of the "FM Approved" certification mark on page 3371 of Grainger's Catalog No. 397, as well as on its website, was inadvertent and without any intent of confusing or misleading the public. (Am. Compl. at ¶¶ 16-17). Defendant, of course, disagrees.

In September 2006, Steiner brought the use of the "FM Approved" certification mark to the attention of Grainger. (Am. Compl. at ¶ 18). Grainger immediately removed the "FM Approved" mark from future reprints of Catalog No. 397 and the product description page of Grainger's website. (Am. Compl. at ¶ 18). By December 2006, links to the PDF version of Catalog No. 397 that appeared on Grainger's website had also been corrected. (Am. Compl. at ¶ 18). The Grainger website and Catalog No. 397 continued to show that Steiner's products were "Made in the USA." (Am. Compl. at Ex. 1, 3, 4)

On December 4, 2006, counsel for Auburn alleged in a letter to Steiner and Grainger that the placement of the "FM Approved" mark in Grainger's catalog constituted false advertising, trademark infringement and a violation of Illinois unfair trade practices statutes (Am. Compl. at ¶ 14; Am. Compl. at Ex. 2). Enclosed with that letter was a draft complaint against Steiner and Grainger, which Auburn threatened to file in the U.S. District Court for the District of Maine, if "you [Steiner and Grainger] do not act promptly to remedy the unacceptable situation your

4

unlawful conduct has created." (Am. Compl. at ¶ 15; Am. Compl. at Ex. 2). Neither Auburn's letter nor its draft complaint referred at all to Auburn's later allegations regarding the advertisement of Steiner's welding blanket products as "Made in USA." (Am. Compl. at Ex. 2).

Steiner's counsel responded to Auburn's counsel in a letter dated January 5, 2007, in which Steiner notified Auburn that Grainger had removed the "FM Approved" mark from its upcoming catalog and current website months earlier. (Ex. C to Resp. to Motion to Dismiss, referenced in Am. Compl. Ex. 5).

Auburn's counsel responded to Steiner (and copied Grainger), on January 12, 2007, that "[t]his matter was first brought to [Steiner's] attention at least as early as October of 2006, and yet remains unresolved." (Am. Compl. Ex. 5). Counsel for Auburn alleged that Steiner and/or Grainger had engaged in additional acts of false advertising under Section 43(a) of the Lanham Act, in association with Steiner's and/or Grainger's purported advertisement, at page 3371 of Grainger's Catalog No. 397 by labeling Steiner's welding blanket products as "Made in USA." (Am. Compl. at ¶ 20). In the January 12, 2007 letter, counsel for Auburn wrote:

> As an initial step in resolving this matter, we seek assurances from Steiner and Grainger that such false claims, including the "Made in USA" claims, will be immediately discontinued. We also expect without any further delay to receive sales information regarding the offending products. I look forward to your reply on these preliminary issues within 5 business days. We can then proceed to determine the extent of compensation that my client will require.

(Am. Compl. at Ex. 5). In the January 12, 2007 letter, Auburn did not threaten to file suit against Steiner or Grainger on Auburn's new "Made in USA" claims, nor did it include a draft complaint alleging those claims. (Am. Compl. at Ex. 5).

On February 2, 2007, three events took place. First, Auburn sent a letter to the President of Lab Safety, alleging that Lab Safety engaged in acts of unfair competition and/or false

5

advertising under Section 43(a) of the Lanham Act, in connection with its advertisement of Steiner's welding blankets as "Made in USA." (Am. Compl. at ¶ 22). Second, Auburn sent a letter to counsel for Steiner regarding the "Made in USA" claim, stating: "Please be advised that [Steiner's offer to cease using the "Made in USA" designation on its welding blankets or in advertisements for the blankets] is not adequate to even attract a counter-offer from Auburn Manufacturing." And third, Steiner and Grainger filed the instant declaratory judgment action before this Court. (Compl. ¶¶ 1 - 22).

## Procedural History

On February 9, 2007, Auburn filed a complaint against Steiner, Grainger, and Lab Safety, in the United States District Court for the District of Maine, including six counts alleging: (1) false designation of origin based on the purported advertisement by Steiner, Grainger, and Lab Safety of Steiner's welding blanket products as "Made in USA"; (ii) false advertising based on the purported advertisement by Steiner and Grainger of Steiner's welding blanket products as "FM Approved"; (iii) trademark infringement based on the purported use by Steiner and Grainger of the "FM Approved" trademark; (iv) violation of the Illinois Unfair and Deceptive Trade Practices Act based on the purported advertisement by Steiner, Grainger and Lab Safety of Steiner's welding blanket products as "Made in USA" and "FM Approved"; (v) violation of the Wisconsin Unfair and Deceptive Trade Practices Act based on the purported advertisement by Steiner, Grainger and Lab Safety of Steiner's welding blanket products as "Made in USA" and "FM Approved"; and (vi) purported unjust enrichment to Steiner, Grainger and Lab Safety as a result of the purported false marketing of Steiner's welding blanket products.

On March 5, 2007, in the instant action, an Amended Complaint was filed, adding Lab Safety as a Plaintiff and seeks the following declarations: (i) that Steiner's or Grainger's inadvertent usage of the "FM Approved" certification mark does not comprise false advertising under Section 43(a) of the Lanham Act; (ii) that Steiner's and/or Grainger's inadvertent usage of the "FM Approved" certification mark does not comprise trademark infringement; (iii) that Steiner's and/or Grainger's advertisement of Steiner's welding blankets as "Made in USA" and inadvertent usage of the "FM Approved" certification mark does not comprise a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (iv) that Steiner and/or Lab Safety's advertisement of Steiner's welding blankets as "Made in USA" does not comprise a violation of the Wisconsin Unfair and Deceptive Business Practices Act; (v) that neither Steiner, Grainger, nor Lab Safety have been unjustly enriched as a result of any purported false marketing of Steiner's welding blankets; and (vi) that Auburn lacks standing to assert a claim for infringement of the "FM Approved" certification mark by Steiner and Grainger. Plaintiffs also seek attorneys' fees and other relief.

## ANALYSIS

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A declaratory judgment is appropriate when it "will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues." *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994), citing *Tempco Elec. Heater Corp. v.*

*Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) (*Tempco*). The parties do not dispute that the Plaintiffs' action will clarify and settle the disputed legal relationships with respect to the "FM Approved" and "Made in USA" certification marks, nor do they dispute that this declaratory judgment action by the Plaintiffs would settle the controversy between the parties. The Court has jurisdiction over Plaintiffs' declaratory judgment action.

Auburn argues, however, that this Court should use its discretion to decline to hear the case, citing *Tempco Elec. Heater Corp.*, 819 F.2d at 747. In *Tempco*, the Seventh Circuit held that it was not improper for a district court to decline to hear a declaratory judgment action if the plaintiffs' lawsuit was anticipatory of a subsequently filed lawsuit. The *Tempco* court noted, "the federal declaratory judgment act is not a prize to the winner of the race to the courthouse." *Tempco*, 819 F.3d at 750 (citations omitted).

In addressing whether a court should hear a declaratory judgment action, courts consider many factors, one of which is the procedural fencing argument raised by Auburn. These factors include:

 (1) whether the judgment would settle the controversy;

 (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

 (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";

 (4) whether the use of a declaratory judgment action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

 (5) whether there is an alternative remedy that is better or more effective.

*Nucor Corp.*, 28 F.3d at 579, citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 105 (6th Cir.1991) (citations omitted).

First, here, the declaratory suit would resolve the issues raised in the substantive suit filed in the District of Maine. The six main forms of relief sought by the Plaintiffs is the mirror of the relief sought by Auburn in the substantive suit; thus, the declaratory judgment would settle the controversy. However, as to the second factor, the substantive litigation would, too, clarify and settle the legal relations among the parties. Further, it is clear that the Plaintiffs will not be inconvenienced by the dismissal of their declaratory judgment action because they will be defending, rather than prosecuting, the claims. Thus, the declaratory judgment action serves no useful, additional purpose. *Amari*, 219 F. Supp.2d at 944 ("Where the substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action 'serve[s] no useful purpose' because the controversy has 'ripened' and the uncertainty and anticipation of litigation are alleviated."). Thus, the first two factors, taken collectively, weigh in favor of the Court's declining to hear the declaratory judgment action.

The parties contest the applicability of the third factor. Plaintiffs asserts that Auburn engaged in a pattern of threats that did not end in the filing of a lawsuit, as a result of which a cloud of apprehension lingered over the Plaintiffs, and especially over Steiner's relationship with its important customers, Grainger and Lab Safety, and that it does not take four months to race to the courthouse. Auburn argues that it had alerted Plaintiffs to impending litigation through letters, one of which attached a draft complaint, and that Plaintiffs filed the suit the same day that Auburn rejected Steiner's latest settlement offer. The letters between the parties support both versions of the events, to some extent. On the one hand, Plaintiffs were certainly aware that

litigation was anticipated by Auburn and that the parties were actively negotiating to settle the matter (even up until the day the declaratory suit was filed) before Plaintiffs filed suit; and, thus, the move to file the declaratory judgment action before this Court could be seen as unseemly procedural fencing that would violate the spirit of the Declaratory Judgment Act. On the other hand, Auburn threatened litigation and then failed to keep multiple deadlines to file suit, all the while engaging in negotiations with important customers of Steiner. Thus, viewing the facts in the light most favorable to Plaintiffs, as the Court is to do in a motion to dismiss, this factor will weigh slightly in favor of retaining the declaratory judgment action before this Court.

The fourth factor – whether the use of a declaratory judgment action would increase friction between our federal and state courts – is inapplicable to this case because both actions are filed in federal court; and, thus, concerns about federalism do not apply.

Finally, the Court must consider whether there is an alternative remedy that is better or more effective. The relative convenience of the competing forums cannot be decided at this time. A fully briefed Motion to Dismiss or Transfer have been filed in the United States District Court for the District of Maine in which the Plaintiffs to this action (the defendants in the Maine action) have asserted that the District of Maine lacks *in personam* jurisdiction over Steiner and Lab Safety and that the matter should be transferred to this jurisdiction. If the court in the Maine action rules that it lacks jurisdiction, or that it should be transferred to this Court, this would weigh heavily in favor of maintaining the declaratory judgment action here. If, however, the court in the Maine action rules that it has jurisdiction over all the defendants, the Court would find that the substantive action in Maine would more effectively resolve the dispute between the parties; and this Court would decline its jurisdiction to hear a declaratory judgment.

10

Nonetheless, because the court in the Maine action has not yet ruled, these facts are not currently before this Court. Thus, viewing the facts in the light most favorable to the Plaintiffs, there is not, at this time, an alternative remedy that is better or more effective.

## CONCLUSION

For the foregoing reasons, Auburn's Motion to Dismiss is denied without prejudice to re-file if the United States District Court for the District of Maine has jurisdiction over all defendants in the substantive action. The status hearing set for June 27, 2007 is vacated and reset to September 11, 2007, at 9:00 a.m.

Dated: June 22, 2007

JOHN W. DARRAH
United States District Court Judge